IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PATRICK WAYNE BOYD II,             §
                                   §
            Petitioner,            §
                                   §
V.                                 §
                                   §        No. 3:11-cv-26-B-BN
RICK THALER, Director              §
Texas Department of Criminal Justice, §
Correctional Institutions Division, §
                                   §
            Respondent.            §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Patrick Wayne Boyd II, a Texas prisoner, has filed an application for

writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the

application should be denied.

## Background

Petitioner was convicted by a Dallas County jury of murder and sentenced by the

trial court to life imprisonment. His conviction and sentence were affirmed on direct

appeal. *Boyd v. State*, No. 08-05-00372-CR, 2007 WL 614041 (Tex. App. – El Paso Feb.

28, 2007, pet. ref'd). Petitioner filed an application for state post-conviction relief. The

application was denied without written order on the findings of the trial court. *Ex parte*

*Boyd*, WR-74,855-01 (Tex. Crim. App. Dec. 22, 2010). Petitioner then filed this action

in federal district court.

The facts and procedural history of this case are uncontested and well known to the parties. On March 19, 2003, Petitioner invited his mother, Janet Cantrell, to his home in order to settle a dispute that apparently arose out of Petitioner's belief that his mother had lied to him and was attempting to "take his son away." *Boyd*, 2007 WL 614041, at *1. When Cantrell refused to admit that she had lied, attempted to take his son away, and tried to kill him, Petitioner "flew into a rage" and attacked his mother. *Id.*

> He began the attack by strangling her with his hands and then stabbing her multiple times with three different kitchen knives. His older sister, Christi Boyd, and a neighbor both attempted, without success, to stop the attack. When a police officer arrived on the scene, [Petitioner] was sitting on top of his mother, still stabbing her. When [Petitioner] did not respond to orders to stop, the officer opened fire. When he finally stopped stabbing and fell over, [Petitioner] had been shot four times.

*Id.* at *1. The primary fact issue at trial was whether Petitioner was capable of understanding that his conduct was wrong at the time of the offense, to justify a jury verdict of not guilty by reason of insanity. *Id.* at *2. The jury rejected his insanity defense and found him guilty of murder.

In multiple grounds for relief, Petitioner contends that: (1) he received ineffective assistance of counsel at trial and on appeal; (2) his conviction was the result of prosecutorial misconduct; (3) the trial judge made numerous errors; (4) he was denied his Sixth Amendment right to confront adverse witnesses; (5) the evidence was factually insufficient to support his conviction; (6) the appellate court applied an incorrect standard of review to his factual sufficiency claim; and (7) the state habeas

court denied his due process rights.

## Legal Standards

Where, as here, a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004). A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed

law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Harrington v. Richter*, 131 S. Ct. 770, 784 (2011) ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning").

On federal habeas review, the district court reviews "only the ultimate decision of the state court, and not the specific contents of its reasoning or opinion." *Blanton v. Quarterman*, 543 F.3d 230, 236 (5th Cir. 2008); *accord Green v. Thaler*, 699 F.3d 404, 414 (5th Cir. 2012) (explaining that a federal court "only review[s] the state court's actual decision, not the written opinion on which it is based"). When the Texas Court of Criminal Appeals denies post-conviction relief without written order on findings of the trial court, the federal habeas court "(1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law." *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003).

## Analysis

*Alleged Ineffective Assistance of Petitioner's Trial Counsel*

Petitioner first contends that he received ineffective assistance of counsel at trial. As best the court understands this claim, Petitioner appears to fault his attorney, Jim Moore, for: (1) failing to hire a private investigator and conduct a proper pretrial investigation; (2) neglecting to convey a plea offer; (3) calling social worker Kathy Finch as an expert witness at trial; (4) failing to call Dr. Douglas Crowder as an expert

witness; (5) neglecting to object to a *Brady* violation, improper *voir dire*, the improper introduction of medical and jail records, and improper statements made by the prosecutor during closing argument; (6) eliciting testimony about the effect of a "not guilty by reason of insanity" verdict; (7) not calling witnesses Char Clark and Jennifer Jackson; and (8) failing to present mitigating evidence at sentencing.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *Id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland,* 466 U.S. at 689), *petition for cert. filed*, (U.S. Dec. 11, 2012) (No. 12-7748). And, to demonstrate prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington,* 131 S. Ct. at 792. "A failure to establish either deficient performance or prejudice defeats the claim." *Woodfox v. Cain*, 609 F.3d 774, 799 (5th Cir. 2010).

1.

Petitioner first claims that his attorney failed to hire an investigator and conduct a pretrial investigation that would have revealed a recording of the 911 call by his sister, Christi Boyd, and her handwritten diary. Both items were introduced at trial without objection. *See* SF-III at 55-58, 61-62, 126 & Ex. 3, 45. The state habeas court found that these items were not exculpatory *Brady* evidence and that Petitioner failed to establish that he was prejudiced by any delay in turnover of these items. The habeas court explained that "the evidence of Christi Boyd's diary and her 911 calls were simply corroborative of her testimony at trial." *Ex parte Boyd*, WR-74,855-01, Tr. at 184. The habeas court credited defense counsel's affidavit testimony that he had "ample opportunity to see, hear, and read all evidence introduced at trial, including the '911 tape' in question." *Id.* at 184. Accordingly, it found that Petitioner was not

prejudiced by any untimely disclosure.

Petitioner has failed to establish that this factual finding was unreasonable. To the extent that Petitioner faults his attorney for neglecting to obtain these items prior to trial, he has not shown that such failure was prejudicial. His self-serving and unsupported statement that he would have pled guilty had he known about the diary and recording prior to trial is insufficient to establish prejudice under *Strickland*. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012) (indicating that a petitioner "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed"); *Green v. Johnson*, 46 F. Supp.2d 614, 622-24 & n.14 (N.D. Tex. 1999) (rejecting habeas petitioner's unsupported claim that he would have accepted pre-trial plea offer if his lawyer had counseled him effectively).

2.

Petitioner next claims that his counsel failed to convey a pretrial offer of nine years imprisonment allegedly offered by the State and only informed him of a plea offer of 12 years confinement. The state habeas court credited the sworn affidavit testimony of Petitioner's trial counsel, Jim Moore, that the best plea offer made to Petitioner was 12 years confinement. *Ex parte Boyd*, WR-74,855-01, Tr. at 189-90. The court

specifically found that the unsworn letter of Christi Boyd provided by Petitioner – Petitioner's sole evidence establish that any nine-year offer was made – was not as persuasive as Moore's affidavit. *Id.* at 190. "A trial court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are 'virtually unreviewable' by the federal courts." *Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005). Petitioner has failed to show that this factual determination was unreasonable in light of the evidence.

3.

Petitioner faults his attorney for calling as an expert witness social worker Kathy Finch, claiming that she was not qualified to provide an expert opinion and her testimony was "confusing, inconcise, and misleading to the jury by her being untruthful about Boyd not knowing he was charged with murder until five-six months after his arrest, when jail records are contrary to such." Dkt. No. 18 at 9. The state habeas court found that Finch gave favorable testimony for Petitioner and that he could establish no prejudice from her testimony – even if she was insufficiently qualified as an expert witness. *See Ex parte Boyd*, WR-74,855-01, Tr. at 182. A review of the trial transcript establishes that Finch's testimony was consistent with an insanity defense, since she testified that Petitioner was suffering from a severe mental disease or defect due to which he did not know the wrongfulness of his conduct. *See* SF-III at 173-75, 198. Other than his conclusory belief that the jury found Finch less than credible, Petitioner has pointed to no concrete examples of prejudice from her largely sympathetic testimony. This cannot meet Petitioner's burden to show ineffective assistance under

the *Strickland* standard.

4.

Petitioner faults his attorney for failing to call Dr. Douglas Crowder to testify in support of his insanity defense. Petitioner asserts that Dr. Crowder, who was retained to conduct a sanity evaluation prior to trial, "would have given testimony in favor of Boyd not being able to appreciate the wrongfulness of his conduct at the time of the offense[,]" Dkt. No. 18 at 12, and his exclusion for financial purposes constitutes ineffective assistance of counsel, *id.* at 15-20; *see also Ex parte Boyd*, WR-74,855-01, Tr. at 105-07, 115). The state habeas court found:

> Applicant's trial attorney called three expert witnesses on his behalf, none of which were retained by the defense. The Court finds that it was likely defense counsel's trial strategy to rely upon experts that had not been retained by the defense in the hopes that such experts would appear more credible. In Attachment B to his supplemental materials, Applicant attaches Dr. Crowder's report in which Crowder states that he "agree[s] with Dr. Self that a definite conclusion about [Applicant's] knowing wrongfulness based on the data available is difficult to reach." In other words, Applicant cannot show that Crowder's testimony would have helped him establish his burden that he did not appreciate the wrongfulness of his actions. Moreover, it would appear from Crowder's report that his testimony would be cumulative to Self's testimony. In short, the Court finds that Applicant can show no prejudice as a result of his trial attorney's decision to rely upon experts that were not paid by the defense instead of calling Crowder as a defense retained, expert witness.

*Ex parte Boyd*, WR-74,855-01, Tr. at 183 (citations omitted).

The *Strickland* standard is highly deferential to strategic choices made by trial counsel. "'So long as counsel made an adequate investigation, any strategic decisions

made as a result of that investigation fall within the wide range of objectively reasonable professional assistance.'" *Cotton v. Cockrell*, 343 F.3d 746, 752 (5th Cir. 2003) (quoting *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002)). "'A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" *Id.* at 752-53 (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)).

Here, Petitioner has not shown that the strategy employed by his attorney was in any way deficient. Petitioner's counsel presented significant evidence of Petitioner's mental illness at trial through sympathetic testimony from independent witnesses Dr. Gary Neller, Dr. David Self, and Kathy Finch. In addition, Dr. Crowder conceded that his findings were essentially identical to those of Dr. Self. *See Ex parte Boyd*, WR-74,855-01, Tr. at 107. Accordingly, Dr. Crowder's testimony would have been cumulative of testimony already before the court. *See Coble v. Quarterman*, 496 F.3d 430, 436 (5th Cir. 2007) (holding counsel's decision not to present cumulative testimony is not ineffective assistance). Nor is there any reason to believe that the outcome of the trial would have been different had this additional evidence been offered by counsel. This ground for relief should be overruled.

5.

Petitioner next asserts that his trial attorney was deficient for failing to object to a *Brady* violation, improper *voir dire*, the introduction of hearsay documents, and improper statements during closing argument.

i.

The prosecution has a duty to disclose all evidence favorable to the defendant in a criminal case. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). To establish a *Brady* violation, a habeas petitioner""must show that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material' to his guilt or punishment." *Mahler v. Kaylo*, 537 F.3d 494, 500 (5th Cir. 2008) (quoting *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994)). As noted above, the state habeas court found that the 911 recording and witness diary "could not be considered *Brady* evidence[,]" concluded that the evidence was simply corroborative of Christi Boyd's testimony, and the state court credited defense counsel's affidavit testimony that he had ample opportunity to review the items. *Ex parte Boyd*, WR-74,855-01, Tr. at 184. Because there is no evidence of an underlying *Brady* violation by the prosecutor, Petitioner cannot show that his attorney was ineffective for failing to raise such an objection.

ii.

Nor was counsel ineffective for failing to object when the prosecutor allegedly recited "the facts of the case repeatedly[,]" by quoting or summarizing the indictment numerous times during jury selection. *See* Dkt. No. 18 at 31-32. The prosecutor stated:

> We have to prove these elements beyond a reasonable doubt.
> Nothing more, nothing less. We have to prove that this
> Defendant, Patrick Boyd, on or about March 19th, 2003,
> knowingly, intentionally caused the death of Janet Cantrell,
> an individual, by cutting or stabbing Janet Cantrell with a
> knife, a deadly weapon, and that happened here in Dallas
> County Texas.

SF-II at 51. Later in his *voir dire*, the prosecutor summarized the elements of an insanity defense, instructing the jury that the defendant must prove "by a preponderance of the evidence that Patrick Boyd was legally insane at the time that he murdered Janet Cantrell." *Id.* at 52; *see also id.* at 53. Petitioner further challenges the prosecutor's summary of his burden to prove Petitioner guilty of the death of Janet Cantrell and of Petitioner's burden to prove the affirmative defense of insanity. *Id.* at 54-55. Petitioner submits that by such conduct, the prosecutor improperly introduced facts of the case into the jury selection process, tainting the jury pool. *See* Dkt. No. 18 at 32.

Contrary to Petitioner's suggestion, there was nothing improper about these statements. The record makes clear that the prosecutor was summarizing the elements required to establish Petitioner's guilt beyond a reasonable doubt and Petitioner's burden to establish an insanity defense by a preponderance of the evidence. It is not improper under Texas law to read or summarize the indictment to the jury during *voir dire. See, e.g., Hawkins v. State*, 278 S.W.3d 396, 401 (Tex. App. – Eastland 2008, no pet.) (denying ineffective assistance claim where defense counsel failed to object to prosecutor reading indictment during *voir dire*). In this case, the prosecutor did not inject any facts into *voir dire* or commit any other improper questioning of the venire panel. Counsel was not ineffective for failing to raise a meritless objection. *See Clark v. Collins,* 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

iii.

Similarly, Petitioner's defense counsel was not ineffective for failing to object to the introduction of Petitioner's prison records and medical reports documenting Petitioner's diagnosis and conduct immediately after his arrest. Petitioner claims that the records were testimonial in nature, because they contained information intended to show that he was aware of the murder charges against him, sought to avoid being questioned by a doctor in front of police officers, and conveyed dismay that his relatives were not assisting him or responding to his phone calls. *See* Dkt. No. 18 at 42-46 (citing SF-III at 183-87, 191, 200; SF-IV at 14, 26, 32).

Regarding his jail records, the State introduced evidence that Petitioner was "[t]alking in a depressing manner, discussing his murder charge and relatives not helping him or answering phone calls." SF-III at 200; *see also* Ex. 42. The State argued in closing that his appreciation of the wrongfulness of his crime was established, in part, by his conduct "sitting on the floor talking about his lawyer, [and asking] why is his family not talking to him?" SF-IV at 26.

Similarly, the State introduced, without objection, Baylor Hospital records that contained information tending to negate his insanity defense, including a doctor's instruction that implies that Petitioner was not suffering psychosis, notes indicating Petitioner's denial of hallucinations and depression, and information that Petitioner requested a police officer leave the room before Petitioner would speak with a psychiatrist. *See* SF-III at 184-87, 191 & Ex. 41. The prosecutor also referred to these records during closing argument, noting that "[n]o acute or need for treatment was

ordered by the psychiatrist at Baylor that day. No medications were ordered that day. He wasn't hallucinating. He was even asking the police officers to get out of the room, before he talked to that psychiatrist." SF-IV at 14; *see also id.* at 32.

On state habeas review, the trial court held that, even if the failure to object to the jail records was deficient, "the objectionable portion of the jail records did not form a significant portion of the State's case and was only briefly referenced in the State's closing argument." *Ex parte Boyd*, WR-74,855-01, Tr. at 191-92.[1] That court also held that medical records are not subject to a Confrontation Clause objection and denied Petitioner's claim. *Id.*, Tr. at 192 (*citing Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312 n.2 (2009) ("Others are simply irrelevant, since they involved medical reports created for treatment purposes, which would not be testimonial under our decision today.")).

Regardless of whether either exhibit contains "testimonial" statements as defined by the Supreme Court, *see Crawford v. Washington,* 541 U.S. 36, 51 (2004); *Brown v. Epps*, 686 F.3d 281, 286-88 (5th Cir. 2012), Petitioner has failed to establish

---

[1] The state habeas court held that the objectionable statements were testimonial under *Russeau v. State*, 171 S.W.3d 871 (Tex. Crim. App. 2005). However, the Court notes that *Russeau* considered statements of fact within prison disciplinary reports written by non-testifying third parties. *See Russeau*, 171 S.W.3d at 880-81. Here, Petitioner challenges the introduction of his *own* statements, contained within a business record introduced under Texas Rule of Evidence 803(6). *See Coker v. Dallas County Jail*, No. 3:05-cv-005-M, 2009 WL 1953038, at *5-*6 (N.D. Tex. Feb. 25, 2009), *rec. adopted,* 2009 WL 1953037 (N.D. Tex. July 6, 2009) (finding jail records containing plaintiff's statements admissible under hearsay rules). It is by no means clear that Petitioner's own statements were "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact" for Confrontation Clause purposes under *Crawford v. Washington,* 541 U.S. 36, 51 (2004). *See Pierron v. Cain*, No. 11-3038, 2012 WL 1247230, at *7 (E.D. La. Mar. 19, 2012) ("The *Crawford* court considered the statements of adversarial witnesses against the accused and did not address statements made by the accused himself. Since *Crawford*, federal courts addressing the use of an accused's own statements have found that a defendant's own admission can be admitted without the right to cross-examination.").

that he was prejudiced by the introduction of these records given the significant evidence – other than these records – that the State introduced at trial that suggests his awareness of the wrongfulness of his conduct. For example, the evidence showed that, prior to his mother's arrival, Petitioner expressed understanding of the consequences of murder, explaining that, "mom had to die. 'I can't do it. You can't do it. I'll live the rest of my life in jail. I'll keep doing what I'm doing, as long as she's alive.'" *See* SF-III at 19. In addition, Petitioner was able to act rationally to elude individuals who might thwart his attack. He assured Christi Boyd's boyfriend, Gabe, that he was "not going to hurt anybody[,]" and waited until Gabe left for work to begin his attack. *See id.* at 27-36. When Christi Boyd retrieved a telephone to call to emergency assistance, Petitioner stopped his assault, moved across the room, pushed the phone out of her hand to prevent her from calling for help, and then resumed his attack. *Id.* at 47-48. Thus, apart from the challenged exhibits, the State presented evidence, in opposition to Petitioner's insanity defense, that Petitioner understood the wrongfulness of his actions, was able to focus his attack on one individual, and took steps to thwart outside intervention. *See id.* at 215-18. Accordingly, this claim should be denied.

iv.

Petitioner also faults his attorney for failing to object to the prosecutor's closing argument for mischaracterizing Christi Boyd's testimony. In closing, the prosecutor stated:

> Folks, you heard from Christi. You heard that back on

-15-

March 19th of 2003, she went over to her brother's apartment; that he asked her in. We know that he had a lengthy conversation with his mother the night before; that he was agitated. Inner fear. Inner fear. He thought his mother was going to interfere with his son – his relationship with his son. "I'm not going to let you do to your son what your father did to you."

*See* SF-IV at 11. He further stated:

[H]e knows that getting rid of her is a wrongful thing to do. "I'm going to spend the rest of my life in prison." There is a repercussion of what he's wanting to do. Another sign that what he knows is wrong.

*Id.* at 29.

A careful review of the trial transcript reveals that the prosecutor's final argument fairly summarized the evidence or drew reasonable deductions therefrom. *See Buxton v. Collins*, 925 F.2d 816, 825 (5th Cir. 1991) (recognizing that prosecutor may summarize and draw reasonable inferences from evidence during closing argument) (citing *Darden v. State*, 629 S.W.2d 46, 52 (Tex. Crim. App. 1982)). Christi Boyd testified that, prior to her mother's arrival and eventual murder at the hands of Petitioner, "[h]e told me that mom was evil, mom had to die. 'I can't do it. You can't do it. I'll live the rest of my life in jail. I'll keep doing what I'm doing, as long as she's alive.'" SF-III at 19. Boyd also testified that Petitioner believed that his mother was attempting to gain custody of his son. *Id.* at 83-84. After the crime, when Christi Boyd confronted Petitioner and demanded to know why he killed his mother, he responded, "[i]nner fear." *Id.* at 60.

The state habeas court concluded that "[t]he interpretation of these statements

by the State were [sic] completely consistent with Boyd's testimony ... [and] there would have been no basis for Applicant's trial counsel to object to the State's argument regarding this statement." *Ex parte Boyd*, WR-74,855-01, Tr. at 189. That Petitioner disagrees with the deductions suggested by the prosecutor, or points to other interpretations of the evidence, does not establish that the closing argument was objectionable. Petitioner's unsupported and conclusory assertion that, "[h]ad Moore objected, the judge would have sustained the issue and instructed the jury to disregard such evidence[,]" Dkt. No. 18 at 28, therefore does not merit federal habeas relief. *See Miller v. Johnson*, 200 F.3d 274, 283 (5th Cir. 2000) (affirming district court's holding that petitioner was not prejudiced by counsel's failure to object where any objection would have been overruled).

6.

Petitioner next claims that Moore elicited inadmissible testimony about the effect of a verdict of not guilty by reason of insanity. During cross-examination of Dr. Gary Neller, the prosecutor stated:

> So, basically, because of this illness that you've characterized Mr. Boyd as having, he pretty much gets a free pass to any of his conduct. It would just be an excuse, because of this illness that he supposedly has.

SF-III at 148. On re-direct, Moore asked Dr. Neller:

> Mr. Hyde has mentioned to you something about Mr. Boyd getting a free pass here. I'm going to ask you to tell the Members of the Jury, if he is found to be insane, tell the Members of the Jury what would happen to him.

*Id.* at 156. Dr. Neller indicated that Petitioner would be committed to a state hospital

for treatment unless and until he could be considered healthy enough to be released by a judge. *Id.* at 156-57. The state habeas court found that, although inadmissible under Texas law, such testimony was elicited to rebut the State's claim and "eliciting such testimony was clearly strategic and in Applicant's best interest in order to have the jury understand that a verdict in his favor was <u>not</u> a 'free pass' but, rather, had serious consequences." *Ex parte Boyd*, WR-74,855-01, Tr. at 187-88. Petitioner has failed to establish that his counsel's strategic choice resulted in a fundamentally unfair trial or that he was otherwise prejudiced by the brief colloquy. *See Cotton,* 343 F.3d at 752.

7.

Petitioner also faults his trial counsel for failing to call Char Clark and Jennifer Jackson to testify about "his deteriorating mental state [] prior to the incident[.]" Dkt. No. 18 at 36. But "complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). To prove that counsel was ineffective for failing to call a witness, "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Id.*

Here, there is no evidence that Clark was available to testify at trial, that she would have done so, or that her testimony would have been favorable to the defense.

As for Jackson, the affidavit that Petitioner submitted in his state habeas proceedings concerns Jackson's interactions with defense counsel. *See Ex parte Boyd*, WR-74,855-01, Tr. at 163-64. The state habeas court found that Jackson's affidavit "simply faults trial counsel for not calling Dr. Crowder as a defense witness and talks about Applicant being a good father but does not explain what testimony she could have offered that might have influenced the jury's verdict against Applicant." *Id.*, Tr. at 189. In her affidavit, Jackson does not indicate an availability or willingness to testify, and her sole statement about any topic relevant to trial was that "I know Patrick and I know that his mental state was not right." *Id.*, Tr. at 163-64. This affidavit does not establish that Jackson's testimony would have been favorable.

Petitioner has failed to meet his burden to prove ineffective assistance of counsel on this score.

8.

Petitioner also faults his attorney for failing to present additional mitigating evidence – specifically, the testimony of Dr. William Flynn and character witnesses Christi Boyd, Char Clark, and Roy Pierson – during the punishment phase of his trial. On state habeas review, the court explained:

> [G]iven that it appears that Flynn's testimony would have been cumulative to the testimony of the three other defense experts that testified during the guilt-innocence phase of this one-day trial, Applicant has not established that he was prejudiced by his trial counsel's failure to call Flynn in the punishment phase of the trial. While Applicant lists other witnesses he claims he had requested counsel to call in the punishment phase of the trial (Christi Boyd, Roy Pierson, Charles Roy and Char Clark), he offers no explanation as to

how these witnesses might have lessened his punishment much less affidavits from the witnesses. Therefore, as to these other witnesses, the Court finds that Applicant has not met either prong of the *Strickland* test.

*Ex parte Boyd*, WR-74,855-01, Tr. at 185 (citations omitted). Petitioner has failed to establish that this finding was erroneous or point to any evidence that these witnesses were available or willing to testify or that their testimony would have resulted in a less severe sentence of imprisonment. *See Day*, 566 F.3d at 538.*Alleged Ineffective Assistance of Petitioner's Appellate Counsel*

Petitioner contends that his appointed appellate attorney, April Smith, was deficient for failing to investigate his claims, review the trial record, provide him a copy of his case file, or assure that a motion for new trial had been filed and ruled upon. He claims that appellate attorney Allan Fishburn, whom he retained prior to the filing of his brief, did not properly argue or brief ineffective assistance of counsel and instead raised meritless issues on appeal.

"The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989); *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("Neither *Anders* nor any other decision of this Court suggests, however, that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."); *id.* at 754 (holding that, "[f]or judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every

'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies *Anders*" and that "[n]othing in the Constitution or our interpretation of that document requires such a standard"). Instead, counsel is obligated only to raise and brief those issues that are believed to have the best chance of success. *See Schaetzle*, 343 F.3d at 445. To prove ineffective assistance of appellate counsel, a petitioner must show that the decision not to raise an issue on appeal fell below an objective standard of reasonableness. *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). "This reasonableness standard requires counsel 'to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention.'" *Id.* (quoting *Williamson*, 183 F.3d at 462-63).

As the state habeas court noted, Petitioner "was represented by Fishburn for the filing of his appellate brief and he has failed to establish any harm by any inaction on the part of Smith." *See Ex parte Boyd*, WR-74,855-01, Tr. at 192. The Clerk's Record shows that Smith did file a motion for new trial on August 25, 2005, which was overruled. *See* Clerk's R. at 47. The appellate record had yet to be finalized before Petitioner retained Fishburn as counsel, so Smith was not deficient for failing to review it. As for Fishburn, he raised two points of error on direct appeal, claiming that the evidence was factually insufficient to support the jury's finding on Petitioner's insanity defense and that the trial court erred in defining reasonable doubt. *See Boyd,* 2007 WL 614041, at *2-*5. The state habeas court found that Petitioner did not show that he

was prejudiced by the raising of these issues. *Ex parte Boyd*, WR-74,855-01, Tr. at 193.

Petitioner has also failed to establish that his conviction would have been reversed had ineffective assistance of counsel been raised on direct appeal. Trial counsel was not ineffective under *Strickland* for failing to raise a claim that failed on habeas review. *See Coker v. Thaler*, 670 F. Supp.2d 541, 554 (N.D. Tex. 2009) (appellate counsel was not ineffective for failing to appeal conviction on grounds that were considered and rejected on collateral review). This ground for relief should be overruled.

*Alleged Prosecutorial Misconduct, Trial Court Errors, and Denial of Sixth Amendment Confrontation Clause Rights*

Petitioner also contends that his conviction was the result of prosecutorial misconduct, that the trial court made numerous errors, and that he was denied his Sixth Amendment right to confront adverse witnesses. *See* Dkt. No. 18 at 49-53. Respondent counters that these claims are procedurally barred from federal habeas review because they were not raised on direct appeal. *See* Dkt. No. 22 at 55-57.

A federal court may not consider the merits of a habeas claim if a state court has denied relief due to a procedural default. *See Sawyer v. Whitley*, 505 U.S. 333, 338 (1992). The state court opinion must contain a "plain statement" that its decision rests on adequate and independent state grounds. *See Harris v. Reed*, 489 U.S. 255, 261-62 (1989); *Smith v. Collins*, 977 F.2d 951, 955 (5th Cir. 1992). To be an adequate ground for denying relief, the state procedural rule must be strictly or regularly applied to similar claims. *See Hathorn v. Lovorn*, 457 U.S. 255, 262-63 (1982); *Johnson v. Puckett*,

176 F.3d 809, 824 (5th Cir. 1999). Under Texas law, claims that could have been raised on direct appeal but are presented for the first time on state collateral review are procedurally defaulted. *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996). The Fifth Circuit has held that "'the *Gardner* rule set forth an adequate state ground capable of barring federal habeas review.'" *Aguilar v. Dretke*, 428 F.3d 526, 535 (5th Cir. 2005) (quoting *Busby*, 359 F.3d at 719).

The state habeas court determined that Petitioner's claims of prosecutorial error, wrongdoing by the trial court, and denial of the right to confront witnesses were barred from collateral review because they should have been raised on direct appeal. *Ex parte Boyd*, WR-74,855-01, Tr. at 193-95. Although a federal court may consider a procedurally defaulted claim if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice," *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), Petitioner makes no attempt to satisfy these requirements. As a result, these claims are procedurally barred. And, even if these claims were not procedurally barred, they are without merit. The Court has considered each claim in adjudicating Petitioner's allegations of ineffective assistance of counsel in the instant habeas petition.

*Alleged Factual Insufficiency*

Petitioner challenges the factually sufficiency of the evidence regarding his affirmative defense of insanity. However, such a claim is not cognizable on federal habeas review. Under the law in effect when Petitioner's appeal was decided, Texas

appellate courts had the authority to review fact questions in criminal cases. *See Clewis v. State*, 922 S.W.2d 126, 129-30 (Tex. Crim. App. 1996).[2] Whether a defendant has established an insanity defense is a question of fact for the jury. *See, e.g., Bigby v. State*, 892 S.W.2d 864, 877-78 (Tex. Crim. App. 1994). A "factual sufficiency" review of the evidence is broader than a "legal sufficiency" challenge under *Jackson*. *See Clewis*, 922 S.W.2d at 129. Instead of viewing the evidence in the light most favorable to the prosecution and determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," a factual sufficiency inquiry views all the evidence to determine whether the verdict "is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis*, 922 S.W.2d at 129. State appellate courts' power to review the evidence's factual sufficiency derives from Texas statutory and constitutional authority, *id.* at 129-30; *see also Bigby v. State*, 892 S.W.2d 864, 874-75 (Tex. Crim. App. 1994), and there is no corresponding right of review under the United States Constitution, *see, e.g., Schrader v. Whitley,* 904 F.2d 282, 284 (5th Cir. 1990) ("[I]n challenges to state convictions under 28 U.S.C. § 2254, only *Jackson* need be satisfied, even if state law would impose a more demanding standard of proof.").

In short, this Court has no authority to conduct a review of the factual sufficiency of the jury's refusal to find Petitioner not guilty by reason of insanity. This

---

[2] In *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), a plurality of the Texas Court of Criminal Appeals overruled *Clewis* and held that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Id.* at 895.

ground for relief should therefore be overruled.

Petitioner also contends that the state appellate court erred by misapplying Texas law to his factual sufficiency claim on direct review. State law questions are outside the province of a federal court considering habeas challenges. *Trevino v. Johnson*, 168 F.3d 173, 184 (5th Cir. 1999). Therefore, this Court will not grant relief where there has been no showing of a federal law violation. *Id.; see also Weeks v. Scott*, 55 F.3d 1059, 1063-64 (5th Cir. 1995) (holding that "[i]t is not our function as a federal appellate court in a habeas proceeding to review a state's interpretation of its own law").

*Alleged Denial of Due Process*

Finally, Petitioner claims in his petition and supplemental brief that he was denied due process in connection with his state habeas proceeding and that the findings of that court are not entitled to deference on federal habeas review for multiple reasons. The Fifth Circuit has repeatedly held that defects in a state habeas proceeding are not cognizable under 28 U.S.C. § 2254. *See Rudd v. Johnson*, 256 F.3d 317, 319-20 (5th Cir. 2001) (citing cases). "That is because an attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself." *Id.* at 320. To the extent Petitioner intends to seek federal habeas relief on that ground, his claim is precluded by Fifth Circuit precedent. And, contrary to Petitioner's assertions in his reply brief, the presumption of correctness applies "even if the hearing was a 'paper' hearing and may not have been full and fair." *Morrow v. Dretke,* 367 F.3d 309, 315 (5th Cir. 2004).

## Recommendation

Petitioner's application for writ of habeas corpus should be denied.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 29, 2013

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE